UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kweli Askari,

        Plaintiff,

        v.

L.A. Fitness International, LLC,
d/b/a LA Fitness,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-2789 ADM/JSM

---

Paul W. Iversen, Esq., Williams & Iversen, P.A., St. Paul, MN, on behalf of Plaintiff.

Melissa Raphan, Esq., and Gabrielle D. Mead, Esq., Dorsey & Whitney LLP, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On September 17, 2010, the undersigned United States District Judge heard oral argument on Defendant L.A. Fitness International, LLC, d/b/a LA Fitness's ("LA Fitness") Motion for Summary Judgment [Docket No. 19]. Plaintiff Kweli Askari ("Askari") asserts claims for violations of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et. seq., the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01-.41, and 42 U.S.C. § 1981.[1] For the reasons stated below, LA Fitness's Motion is granted.

---

[1] At oral argument, Askari agreed his claims for breach of contract, unjust enrichment, and quantum meruit (Counts VI, VII, and VIII) must be dismissed. As a result, these claims will not be addressed.

## II. BACKGROUND[2]

LA Fitness hired Askari as a sales counselor when it opened its St. Paul club in July, 2008. Compl. [Docket No. 1] ¶¶ 8, 9. Sales counselors sell club memberships and earn commissions on memberships sold. See Hustad Aff. [Docket No. 24] ¶ 15. Sales are generated through walk-ins and individual marketing efforts. Id. ¶ 4. Walk-ins are generally directed to sales counselors on LA Fitness's "Ups List."[3] Id. ¶ 5.

During Askari's tenure at the St. Paul club, Ed Hustad ("Hustad") served as LA Fitness's Regional Vice President. Id. ¶ 1. Each club has a General Manager who is that club's highest ranking employee and reports directly to the Regional Vice President. Id. ¶ 3. For the majority of Askari's employment, Bruce Vackner ("Vackner") was the General Manager of LA Fitness's St. Paul club. See Vackner Aff. [Docket No. 26] ¶ 1.

Hustad (with approval from his supervisor) was responsible for promotion decisions. Hustad Aff. ¶ 10. Factors considered for promotion include character, integrity, sales history, supervisory abilities and/or potential (including the ability to motivate and direct employees), and the recommendation of the candidate's supervisor. Id. On September 16, 2008, Hustad promoted William Joyner, a Caucasian, to Weekend General Manager of the New Brighton club. Id. ¶ 11. Around the same time, Hustad promoted Arron Evans ("Evans"), an African American, to Weekend General Manager, and then in May, 2009, to General Manager of the St. Paul club.

---

[2] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[3] The "Ups List" consists of sales counselors who meet the previous day's quota of identifying leads, scheduling appointments that are attended, or selling a specified minimum number of memberships in a particular day. Hustad Aff. ¶ 5.

Id. ¶ 13.

From September 16, 2008 to November 30, 2008, Askari was the leading sales counselor at the St. Paul club for four out of five pay periods: 09/16/2008 - 09/30/2008, 10/1/2008 - 10/15/2008, 10/16/2008 - 10/31/2008, and 11/16/2008 - 11/30/2008. Stokesberry Aff. [Docket No. 27] ¶ 9. He was one of the top three sales performers for an additional four pay periods between July 1, 2008 and January 31, 2009. Id.

Despite his successful sales performance, Askari's supervisors reported frustration with Askari's conduct. Vackner Aff. ¶ 5 ("Although Askari [sic] good at selling memberships, he just didn't want to follow the rules. For example, I asked him to go out marketing on several occasions; he refused. He argued with me about which desk he should sit at in the club. . . . He said to at least two employees that he was upset with: 'Let's go outside.'"); Evans Aff. [Docket No. 25] ¶ 8 ("I would tell Askari to go out marketing so that he could generate leads and business for the Club. He refused several times . . . . Although he was good at selling memberships, Askari did not want to listen to directions from his managers, and was often rude to me."); Id. ¶ 11 ("There is no one else I have supervised who has engaged in the type of conduct that led me to recommend Askari's termination."); Hustad Aff. ¶ 29 ("No other employees at the Club acted in the way Askari acted.").

For his part, Askari alleges that Vackner repeatedly made racially offensive comments in the workplace. Mead Aff. [Docket No. 22] Ex. 1 (Askari Dep.) at 231 (accusing Vackner of using racially derogatory terms "on a daily basis").

In October, 2008, Askari failed to follow company policy on handling cash. Hustad Aff. ¶ 24. Vackner intervened on Askari's behalf and, as a result, instead of terminating Askari's

3

employment, Hustad wrote a disciplinary note to his file. Id. That same month, Askari contacted Hustad complaining that the club had treated one of its African American members unfairly.[4] Id. ¶ 28. Hustad spoke with the member who made no mention of unfair treatment. Id. In December, 2008, Evans and Askari had a disagreement over who had earned a commission sale. Evans Aff. ¶ 10. Askari informed Vackner about the incident. Id. In January, 2009, Askari informed Evans that he was going to take another employee home. See Askari Dep. at 253-54. Evans asked him not to go, but Askari left anyway. Id. at 254. When Askari returned to the club, Evans sent him home and wrote him up for this conduct. Evans Aff. ¶ 10. Evans contacted Vackner and recommended Askari's employment be terminated. Id. Vackner notified Hustad, who concurred with the recommendation. Hustad Aff. ¶ 29. On January 20, 2009, LA Fitness terminated Askari's employment.

## III. DISCUSSION

**A. Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving

---

[4] The club had placed a bowl of candy out to celebrate Halloween. The club's Operation Manager saw an African American member come into the club with several children and allegedly removed the bowl of candy from the children's reach. Hustad Aff. ¶ 28.

4

party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. Discrimination Claims[5]**

In Counts I, II, and III of the Complaint, Askari alleges that LA Fitness discriminated against him on the basis of race in violation of 42 U.S.C. § 1981, Title VII, and the MHRA.[6] Section 1981 protects a person from discrimination on the basis of race in the making and enforcing of contracts. See 42 U.S.C. § 1981(a). Although not specifically referenced in the statute, § 1981 applies to employment contracts. See Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 459-60 (1975). Title VII states that it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). The MHRA provides that "it is an unfair employment practice for an employer, because of race . . . to . . . discharge an employee" or "discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn. Stat. § 363A.08, subd. 2. While the exact contours of Askari's claim is not entirely clear, Askari appears to argue that he was discriminated against in two ways: (1) his employment was terminated on account of his race, and (2) his work environment was racially hostile.

---

[5] LA Fitness argues that some of Askari's claims have not been properly exhausted or are time-barred. Because the Court grants summary judgment, exhaustion or limitations issues need not be resolved.

[6] The elements of a MHRA, Title VII and § 1981 discrimination claims are the same. Saulsberry v. St. Mary's University of Minnesota, 319 F.3d 862, 866 (8th Cir. 2003). Thus, these counts are analyzed together.

5

**1. Termination**

Askari may survive LA Fitness's Motion for Summary Judgment on his discriminatory termination claim in one of two ways. First, Askari can offer proof of "direct evidence" of discrimination. Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). Alternatively, if Askari lacks direct evidence of discrimination, he can avoid summary judgment by "creating the requisite inference of unlawful discrimination" including "sufficient evidence of pretext" under the burden-shifting analysis announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Id.

**a. Direct Evidence**

Askari alleges that Vackner's repeated offensive and racially discriminatory comments constitutes direct evidence of discrimination. LA Fitness responds that Askari's allegations are vague and imprecise and thus insufficient to establish direct evidence. Direct evidence is evidence of conduct or statements made by persons involved in the decision-making process "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Id. However, not all comments that may reflect a discriminatory animus are sufficiently related to the adverse employment action to support such an inference. Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999). For instance, direct evidence does not include "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself." Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006) (internal quotations omitted).

In this case, the uncontradicted evidence shows that Evans, an African American, not

Vackner, made the recommendation to terminate Askari. Vackner merely concurred with the recommendation and informed Hustad. Askari presents no evidence that Vackner was a decision-maker in terminating Askari's employment or manipulated the decision-making process related to the termination. Accordingly, Vackner's alleged remarks are insufficient to constitute direct evidence that Askari's termination was related to his race. See Brooks v. Pioneer Metal Finishing, No. 06-841, 2007 WL 1378417, *3 (D. Minn. May 7, 2007); Ramlet v. E.F. Johnson Co., 464 F. Supp. 2d 854, 860 (D. Minn. 2006).

### b. Indirect Evidence

As Askari has not produced direct evidence of discrimination, his claim must be analyzed in accordance with McDonnell Douglas. Under that paradigm, a plaintiff must first establish a prima facie case of race discrimination by showing that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. See Fields v. Shelter Mut. Ins. Co., 520 F.3d 859, 864 (8th Cir. 2008).

While a minimal evidentiary showing will satisfy the burden of production at the prima facie stage, see Turner v. Honeywell Fed. Mfg. & Techs., LLC, 336 F.3d 716, 720 (8th Cir. 2003), whether Askari has met his burden need not be decided. "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983); see also Riser v. Target Corp., 458 F.3d 817, 820-21 (8th Cir. 2006). Here, LA Fitness has articulated a legitimate, nondiscriminatory and nonretaliatory reason for terminating Askari's employment - his insubordinate conduct.

7

Therefore, the Court "need not indulge the parties' disputes about which material facts are in dispute or whether [Askari] met his burden in establishing a prima facie case under McDonnell Douglas . . ." Id.; accord Steward v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007) ("if an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext . . . "); Hervey v. County of Koochiching, 527 F.3d 711, 719 (8th Cir. 2008) (jumping directly to the "ultimate question of discrimination *vel non*.").

Askari responds by arguing that the insubordination reason proffered by LA Fitness is pretext for race discrimination. In considering the pretext issue, the "inquiry is limited to whether the employer gave an honest explanation of its behavior," not whether its action was wise, fair, or correct. Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994) (quotation omitted). There are at least two ways by which a plaintiff can create a question of fact regarding pretext. Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006). First, a plaintiff can show pretext with evidence that "the employer's proffered explanation is unworthy of credence because it has no basis in fact." Id. at 1120 (internal quotations and citations omitted). Second, a plaintiff can show pretext "by persuading the court that a [prohibited] reason more likely motivated the employer." Id. (internal quotations and citations omitted ) (alteration in original). "Both of these routes, in effect, amount to a showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action." Id.

Askari has adduced no evidence to support his argument that his termination was a pretext for discrimination. Askari admits that in January, 2009, Evans specifically directed

8

Askari not to leave the club, but Askari left anyway. Askari's supervisors reported unacceptable workplace behavior on Askari's part. See Vackner Aff. ¶ 5; Evans Aff. ¶¶ 8, 11; Hustad Aff. ¶ 29. In addition, Askari can point to no other employee who engaged in such behavior and was not fired. Askari contends that Vackner's remarks indicate discriminatory animus toward African Americans, and argues that this is evidence that LA Fitness's proferred reason for his termination is pretext. But, as discussed above, offensive comments made by a non-decisionmaker, without more, do not create a trial-worthy issue of pretext. Dukes v. Specialty Staff, Inc., No. 07-2587, 2008 WL 4205363, *4 (D. Minn. Sept. 8, 2008). Furthermore, the record indicates that Vackner intervened on Askari's behalf after an incident where Askari violated company policy. Therefore, to the extent that Vackner's alleged comments have any bearing on Askari's termination, the inference that discrimination was a motivating factor is negated because of Vackner's efforts to retain Askari at the club. See Wilcoxon v. Ramsey Action Programs, Inc., No. 04-92, 2005 WL 2216289, * (D. Minn. Sept. 12, 2005) (considering the alleged harasser's efforts to retain the plaintiff at the agency as a factor that negates the inference of discrimination).

In addition, although members of a protected class may sometimes discriminate against other members in that class, Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 78 (1998), a plaintiff faces a difficult burden of establishing discrimination when the decision-maker is a member of the same protected class as the plaintiff. Almon v. Goodyear Tire and Rubber Co., No. 07-4104, 2009 WL 1421199, *7 (D. Kan. May 20, 2009) ( "proof that the decisionmaker is . . . the same race as the plaintiff considerably undermines the probability that race was a negative factor in the employment decision"); Taylor v. Procter & Gamble Dover Wipes, 184 F. Supp. 2d

9

402, 413 (D. Del. 2002) (finding inference of discrimination "less plausible" when the decision maker is the same race as the plaintiff). Thus, the fact that Evans, the very person who recommended Askari's termination, is African American negates an inference of pretext.

As the Eighth Circuit has explained, "[o]ur cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination. <u>Kiel v. Select Artificials</u>, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc) (citations omitted). In short, LA Fitness based its decision to terminate Askari on legitimate reasons; there is simply no evidence that impermissible considerations such as Askari's race were a motivating factor in his termination.

**2. Hostile Work Environment**

A hostile work environment exists when the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Gordon v. Shafer Contracting Co.</u>, 469 F.3d 1191, 1194 (8th Cir. 2006) (internal quotation omitted). To establish a prima facie case of a hostile work environment,[7] Askari must demonstrate that: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment sufficiently severe or pervasive as to affect a term, condition, or privilege of employment; and (3) a causal nexus exists between the two. <u>See id.</u> at 1194-95. When determining whether the alleged conduct rises to the level of prohibited abusiveness, the Court must examine a number of factors including whether

---

[7] Here again, each statute applies a common standard to establish such a claim. <u>See</u> <u>Ross v. Kansas City Power & Light Co.</u>, 293 F.3d 1041, 1050 (8th Cir. 2002) (Title VII and Section 1981); <u>Hervey v. County of Koochiching</u>, 527 F.3d 711, 719 (8th Cir. 2008) (Title VII and MHRA).

the conduct "unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

Askari contends that Vackner's racially offensive comments subjected him to harassment. However, Askari's claim fails because he has made only vague allegations of harassment by Vackner that lack any evidentiary support; he cannot recall the dates of the incidents nor has he provided any evidence to corroborate these incidents. See Johnson v. XPEDX, No. Civ. 03-2630, 2004 WL 2453051, *3 (D. Minn. Oct. 24, 2004) (granting summary judgment on hostile work environment claim in part because plaintiff could not recall the specifics of the allegedly threatening and intimidating behavior); see also Frangesh v. Potter, Civ. No. 06-4951, 2007 WL 4224054, *6 (D. Minn. Nov. 27, 2007) (same).

Furthermore, Askari has not produced any evidence of how Vackner's alleged actions affected a term, condition, or privilege of Askari's employment. Askari remained among the top sales performers through the end of November, 2008. Askari's sales declined in December and January and he attributes the decline to being "discriminatorily not allowed to complete sales." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Docket No. 31] at 13. By this, Askari asserts that Vackner prevented him from completing sales and earning commissions. However, Askari makes no allegation that Vackner's conduct was based on Askari's race. Indeed, the only evidence of Askari complaining, pursuant to LA Fitness's company policy, to the Human Resources Department, does not support his claim. In January, 2009, Linda Bessant ("Bessant"), an Employee Relations Manager, took a call from Askari where he complained of Vackner's conduct. See Bessant Aff. [Docket No. 23], Ex. 1. Nowhere in Bessant's notes does it indicate that Askari mentioned race or even intimated that Vackner's conduct was based on Askari's

11

race. Askari told Bessant that Vackner was giving walk-ins to two other sales counselors: Christopher and [K]arl[ie]. Id. Christopher is African American and Karlie is Asian. Def.'s Mem. in Supp. of Summ. J. [Docket No. 21] at 11. Thus, Askari's allegation that Vackner diverted sales on account of race is negated by the fact that at least some of the individuals that Vackner allegedly diverted Askari's sales to were themselves non-white. Finally, Askari has not shown Vackner singled him out for harassment. To the contrary, Askari alleges that Vackner was being unfair to everyone. In sum, Askari has not demonstrated that the alleged harassment unreasonably interfered with his work performance. Accordingly, Askari cannot meet his burden of proving that the alleged harassment was so severe or pervasive as to alter a term, condition, or privilege of his employment.

## C. The Reprisal and Retaliation Claims[8]

In Counts IV and V, Askari alleges claims of retaliatory-discharge. The MHRA makes it unlawful for an employer to "intentionally engage in any reprisal against any person because that person" opposed a practice forbidden under the MHRA. Minn. Stat. § 363A.15(1). Title VII includes a similar provision which prevents employers from firing an employee for opposing an unlawful employment practice. See 42 U.S.C. § 2000e-3(a). Because the record does not demonstrate direct evidence of discrimination,[9] the McDonnell Douglas burden shifting analysis applies to both the MHRA reprisal claim and the Title VII retaliation claim. Reico v. Creighton

---

[8] Although the MHRA uses the term "reprisal" rather than "retaliation," reprisal claims are analyzed using the same methodology as that of retaliation claims under Title VII. Springer v. McLane Co., Inc., 692 F. Supp. 2d 1050, 1057 (D. Minn. 2010); Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 1010 (Minn. 1999).

[9] See supra Section III.B.1.a.

Univ., 521 F.3d 934, 938-39 (8th Cir. 2008) (Title VII retaliation claim); Thorn v. Amalgamated Transit Union, 305 F.3d 826, 830 (8th Cir. 2002) (MHRA reprisal claim). To prevail under that framework on his retaliation and reprisal claims, Askari must first establish that (1) he engaged in statutorily-protected conduct; (2) an adverse employment action was taken; and (3) a causal connection exists between the two. Smith v. St. Louis Univ., 109 F.3d 1261, 1265-66 (8th Cir. 1997) (Title VII retaliation); Bahr v. Capella Univ., 765 N.W.2d 428, 433 (Minn. Ct. App. 2009) (MHRA retaliation). The defendant then must advance a legitimate reason for its challenged behavior. Thorn, 305 F.3d at 830. If the defendant advances such a reason, the plaintiff must produce evidence demonstrating that the defendant's reason is pretext for unlawful discrimination. Id.

Askari argues that he was terminated for reporting a racially hostile environment. LA Fitness responds that Askari's claim fails on the first element of a retaliation claim because his vague complaints did not rise to the level of protected activity. This question need not be resolved because even if Askari's conduct was protected, the record evidence demonstrates that the primary reason for Askari's termination was his insubordination and, as discussed above, Askari has not proffered a triable issue that the reason for his termination was pretextual. "An employee who engages in protected activity is not insulated from adverse action for violating workplace rules . . ." Kiel, 169 F.3d at 1136. As one court has noted, insubordination "will get you 'fired' almost anywhere." Manson v. Little Rock Newspapers, Inc., 42 F. Supp. 2d 856, 867 (E.D. Ark. 1999).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that LA Fitness's Motion for Summary Judgment [Docket No. 19] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_s/Ann D. Montgomery_
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 5, 2010.